Fourth and final case of the morning, Flock of Seagirls v. Walton County, Florida, 20-12584. And I see we have Ms. Giddings for the appellant, Mr. Warner for the appellee. Ms. Giddings, whenever you get settled and are ready, fire away. Good morning, Your Honors. May it please the court, I'm Katherine Giddings of Ackerman, and I'm here today representing Flock of Seagirls and Valentine Heights. And I've reserved four minutes for rebuttal. Your Honors, what you have here are property owners who purchased their property and they pay taxes on that property. And that property had a recorded document as an encumbrance on that property that had specific obligations on the part of the county. It had very specific plain language that said there is an easement across the high mean waterline, the 75 feet. Now remember, this doesn't cover the wet part. The public can walk down there. And it is only to be used for the specified purpose of a way of passage by foot only. And it expressly states that if the county uses or even attempts to use it for a purpose other than this way of passage, then the property owners have the right to, after giving notice to the county and giving it an opportunity to cure, to terminate that easement and to bring a court action. The remedy is set forth there in the easement. The county concedes that this is what the easement says. Can I ask you just a quick question, I guess, about practical implications? If we are to find that the easement here has been abandoned, does that mean that one walking along the beaches of 30A, so long as you're in Seaside, you're good in the dry sand. And if you're in Rosemary, you're good in the dry sand. And you're in Alice, you're good in the dry sand. And when you get to Watercolor, you need to walk down to the wet sand. Well, we're only asking it for these two parcels. So theoretically, yes. But it's my understanding that there are a number of private beaches in that area. So you already have that. But, Your Honor, even if that is the case, even if that is the case, there is a contractual agreement here between the parties. And the county still tells this court, not only did it refuse to cure as required by the easement agreement, but even in its brief here, it says, we could do this because of the customary use doctrine. I'm sorry. Go ahead. Let me also just ask sort of an orientation question and a practical effects. Yes, ma'am. Let's assume, for the sake of argument, you win this case, easement is terminated. There is a state court litigation about customary use. Yes. So you could lose that. That's a question for another day, although we believe that, you know, customary use requires continuous use, and there's this easement agreement. So we don't believe that applies. But that's possible. It is possible, yes. It is possible. Pedestrian easement, but you could win this pedestrian easement, but then it is possible that customary use could come into play and it would be a more expansive. That's a day. That's a question for another day. Yes, Your Honor. Yes, Your Honor. Can I ask? I'm so sorry, and then I know Judge Legola has a question, but I just want to make sure that we're sort of like tying up this thread here. The customary use doctrine, likewise, as I read the case, the sort of the main Florida Supreme Court case, has sort of an abandonment exception built into it, right? Yes, Your Honor. It absolutely does. So effectively, when that litigation comes to a head, it will be this same argument all over again about abandonment? Well, it would be not exactly the same argument because we are here interpreting this contract and the county versus the property owners. I mean, one of the arguments would be that it was not continuous. But if you remember looking at the Tonorama case and then the Trepanier case, those cases can be abandoned. You know, I think, though, that this is a little bit different because even though the paragraph is labeled abandonment in the easement agreement, the portion that we're relying on, the use or attempt to use it for something else, is almost in the nature of termination. So, and remember— Well, I guess they use the word abandonment because that's normally what you do for an easement, but it is sort of a termination of the easement. Yes, Your Honor. And even the district court agreed that the easement could be terminated. She just said that you had to look at the common law because of this consent judgment. Well, let me ask you a question about— So we're here applying Florida law, correct? And in Florida, an easement can be construed as a contract. And under our Florida law, a contract has to expressly identify any document that is being referred to in another document. Yes, Your Honor, that's correct. In order for it to be applicable. Yes, Your Honor. That's my understanding. That is correct. Is there anything in this particular easement that then refers back expressly to the consent judgment? The only thing in the easement agreement that has anything to do with those earlier documents is that the county agreed that this easement was consistent with the ordinance, which was the development order. And that the consent judgment, if you look at it, it says that the parties can do anything consistent with that. And that development order is very—I mean, the consent judgment is very curious. It's very unusual. That was an eminent domain proceeding, and the state brought that against St. Joe for hundreds and hundreds of acres and ended up agreeing with them to pay them $100 million for that property. Well, St. Joe is obviously a sophisticated developer, so it saw its opportunity and it grabbed the county and brought them in. And so all of this easement at that time was a part of that stipulated agreement. So this was not a factual finding, you know, ultimate determination by court. This was simply a stipulated agreement between the parties. And now we all know that parties agree in supplemental contracts. Frequently they change the terms that they've potentially agreed to. But it's our position that you don't even need to look at those documents because they are not in this easement. And, Your Honors, I think it's very, very important here to understand that as a property owner, you have a right to know when you buy your property what those terms are. And for a county just to come in and acknowledge, well, this is what the terms are, but we don't have to abide by them, you know, that's just wrong. You know, you can't allow a county to come in and make promises and then change its mind. And that's what happened here. So we think that the district court was confused. The district court first found that the uses that the county was trying to use, the recreational use, were clearly outside the bounds of what was allowed under this agreement. But then in finding in favor of the county, she said, but I'm going to find it's consistent with that use so that there's not an abandonment. But we're going on the express words of the easement agreement. And so we think that the judge got it wrong when she said, you have to look at the common law, you can't look at the plain language of this. I mean, you can agree to a remedy in a contract, so why would you revert to the common law? And she said there had to be intent, but, you know, we gave the county notice and they refused to withdraw the customary use ordinance, and it wasn't until the legislature told them you can't have an ordinance like that without a judicial determination that the ordinance went away. So we're just here to protect my client's property rights. And if the court has no more questions, I've got one. And I've asked you to assume you win in this case. And, again, just assuming for the sake of honor. Yes, Your Honor. In footnote eight of the red brief, opposing counsel said, you have requested that we rule to terminate the agreement. However, the rights of the association and potentially the state of Florida in this matter were not fully resolved by the lower court. And the county has said the proper remedy would still not be termination until the lower court further resolves the matter of any prejudice to the association and all parties to the consent judgment. So in this hypothetical world, assuming you win, what is the remedy? Your Honor, our position is that the remedy is with directions that they enter judgment in favor of our client. If you read the order carefully, this is what the district court said about Watercolor. Remember, it originally thought that it just summarily found that they were an indispensable party and it would destroy diversity jurisdiction. And then on rehearing alter to amend, the district court changed its mind and recognized Watercolor would be aligned with the county. Watercolor doesn't want to get into a dispute with the county because it's got so much development there. But it says, the order says, the association is not a named party to the easement. The association doesn't own the lots. It did receive a dedication from St. Joe, not the county, of all access easements. So that's between the property owners and Watercolor. And it says that we make a very good point that the obligations of Watercolor and the property owners can coexist in the termination of one party's obligation doesn't terminate another. And then it goes on and it says in a footnote, 18 in the order, that a private easement is not extinguished by a public authority's abandonment of the private easements. So that even if it is determined that the county abandoned the easement, whatever rights or obligations passed to the association through the prior dedication and documents obligating it to comply with the consent judgment would stand independently. Now the county has not asked this court to review any of those findings. And after making those findings, the court said, but because of the way I'm ruling, I don't need to look at prejudice. We would suggest to you that the order itself on its face has already concluded. You can't reach any other conclusion. And the state's rights, that did not get brought up until the district court judge mentioned the state of Florida under the consent judgment. So again, we're asking for a declaration on this easement agreement between the county and between our clients. Thank you, Your Honor. Very well. Thank you very much. You've got four minutes remaining. Mr. Warner. May it please the court. Good morning, Your Honor. Bill Warner, representing Walton County. To Judge Branch's initial question to the appellant, Judge Rogers in her summary judgment order noted at footnote 12 that an oral argument plaintiff's counsel acknowledged that his clients are involved in the customer use suit and that the ruling by this court terminating the recorded easement would not impact any issue to be decided in the pending case. And that case is going. But so, I mean, for purposes of our case, and we tried to knock her off her stride several times, but Ms. Giddings, you know, wants us to focus on the language of the easement, I think, understandably, right? So, I mean, you agree that the easement says that any use or attempted use for any purpose not specified in the easement constitutes an abandonment or a termination, right? I agree that the abandonment clause says that. And just let me follow up. Sort of the minor premise of this is do you agree that the only purpose specified in the easement is a way of passage? Not necessarily, Your Honor. So what other, I mean, the way I looked up specified to try to figure out what it means. The dictionary I found said that it means particularly or precisely identified. So what other use is particularly or precisely identified in the easement? Well, I think this gets to another important issue, and that is whether or not the consent judgment or more precisely the development order, Resolution 9979, was incorporated within the terms of the easement. Just so I'm clear, kind of tracking, do you then acknowledge that without incorporation of the resolution and or the consent judgment, there isn't anything in the easement specifically identified that would qualify? Without the incorporation? Yeah. Correct, unless, as Judge Rogers alternatively found, there was an ambiguity in the easement that allowed her to consider the language of the consent. Because when Judge Rogers says, I mean, it seems to me she sort of grafts onto this easement a different standard. Instead of, you know, what is it, specified, she uses consistent with. And some of the uses in the ordinance might be consistent with in kind of a vague way, but some aren't. I mean, you know, like fishing, sunbathing, that's not locomotive, if you will. That's, you know, recreational. Well, true. But, again, the consent judgment and the development order, again, if you rewind to when this easement was granted pursuant to this consent judgment, were involving St. Joe Company, the developer who ultimately developed the property, and from whom the appellants derived their interests. There were requirements for this perpetual, and what the document says, but both the development order, which incorporated by reference and attached the consent judgment, said it's a public access easement. Now, granted, this easement says way of passage, but it also says over and upon the property. So, again, to your point. But doesn't it say in a particular way, and it's by foot? Exactly. Yes, it does. Except for the, it does say by foot. That would be correct. And there's nothing in the record that suggests that anyone was not utilizing the easement by anything other than on foot. But if you're plunked down building a sandcastle, that's just not passage. It's not. But if you've granted an easement over and upon, as Judge Rogers said in her order, walking along the beach, walking along the Gulf of Mexico in South Walton County certainly suggests that you're going to stop and look. You may go into the waters, which are sovereign lands. You may swim. You may not be camped out there overnight, but it's not necessarily inconsistent with the use that's granted in the easement. So your point is that anything, I guess your point is basically that anything that is incidental, any use that is incidental to passage by foot would be fair game. Yes. Well, has the easement been used for anything other than footpath since its inception? Well, that's the other missing link, I guess, in this, Your Honor. And that is there is no record evidence other than the enactment of the ordinance, which is what the appellants are flying on, that the easement was ever abused or the use was ever expanded by anyone, that there was any ever expansion of use, or that there's no record evidence that anybody ever pitched a tent or camped out on the property or did anything other than what was allowed. The focus of the claim is that the mere enactment of this ordinance resulted in an attempt to expand the use. And to that point, I disagree with that. If you look at the ordinance itself, the severability clause contained specifically contemplates that there may be judicial challenges as to whether or not the ordinance applies to a specific parcel. And in that instance, the ordinance provides that if a court makes a determination that it does not apply to some property, that does not mean it does not apply to other properties without the counties. Remember, the county went through a legislative process where they introduced evidence and ultimately concluded that customer use applied to the entire stretch of beaches in Walton County, which is approximately 26 miles. So my primary argument in this case is that the mere enactment of this ordinance did not, in fact, expand. But how do you make that consistent with Florida law that says that an easement can be construed as a contract and parties can contract away their rights? And this is very specific language that says that St. Joe is entitled to terminate the easement if the easement isn't continued for the purpose that it's expressed, which is using it for foot traffic. I think you can if you just narrowly focus on the abandonment clause without looking at any other terms in the easement itself, which indicates in a couple of places that it's a perpetual easement. I'm sorry. Let's talk about the perpetual means because that, to me, is interesting. I mean, does the fact that it says that it's permanent or perpetual, does it mean that there's no conditions that can be imposed on it? I mean, that sort of seems to be the implication that you're doing. But to me, the way I view this particular section here is that you can have a perpetual easement as long as it's used for the purpose that the easement was agreed to. Right, but this is where it gets back to whether or not the court properly considered the inclusion of the development order and consent judgment because under the terms of the development order and consent judgment, that was a permanent pedestrian public access. So that would be an inconsistency. But I think Judge Ligoa's question, I don't mean to put words in her mouth, so it's my question, but I think it piggybacks on hers, is that permanent and perpetual doesn't mean can't ever be terminated. It just means doesn't expire of its own force. And I don't disagree with that, Your Honor. But what I'm saying is you have the internal inconsistencies within the easement language itself of a perpetual use and then this abandonment provision which says attempt a use. Again, back to my point, I don't believe the ordinance itself, the mere enactment of the ordinance would have triggered an abandonment or termination provision under that abandonment clause in the easement document. Again, as you had asked counsel earlier, what happens if this court were to reverse or if the easement would go away? You would essentially have kind of a jack-o'-lantern situation because this easement runs approximately, this express easement runs approximately a quarter mile from a section line that is just east of the 20-foot access easement across the sand all the way to Grayton Beach State Park. It does not impact merely the appellant's two properties in the Beach Lane subdivision of which there are nine lots. It impacts the entirety of the watercolor development, which is, again, a St. Joe development, all along there. And all the property owners have the same easement? Correct. I'm sorry, the contract that includes the same easement, sorry. Exactly. And then in addition to that, you've got the plat of Beach Lane itself depicts the 75-foot permanent public access easement. The appellants, to counsel's point, were deeded their properties according to the plat, which meant that they took that subject to that recorded public access easement that was indicated on the plat itself, too. So that's there as a plat obligation. In addition to the consent judgment obligation, the development order obligation, the comprehensive plan obligation, and the county's land development codes obligation, all of which incorporated and folded in the consent judgment. Again, back to the point was these were conditions of development that were granted to St. Joe through the eminent domain proceeding. And these folks are the successors and assigns, which is why Judge Rogers said that they could bring this challenge to begin with. Let me ask you a question about Judge Rogers' order and the resolution and the consent judgment. Let's just assume that we say that it was error to find that this easement incorporated by reference the resolution and the consent judgment. So just imagine that world. In Judge Rogers' order, she is not only looking to the contract between the parties, but she's also looking at the common law of abandonment. If those two documents are not incorporated by reference, what would justify this departure from the contract language to engraft onto it the common law of abandonment? I think it was her alternative finding that there was an ambiguity in the construction of those terms in the abandonment. So if we say there's no ambiguity, the common law of abandonment doesn't come in. I think if you say that the consent judgment and the development order were not incorporated and that there's no ambiguity, I think you're right. Can I ask you a quick question just about incorporation? So as I read the easement, it definitely says that the county, by acceptance of the easement, agrees to incorporation, we'll say, just to short circuit it. But incorporation typically requires that we look at both parties' intent, right? And is there any evidence here that the homeowners agreed to the incorporation or the property owners agreed to the incorporation? Well, again, this is where you kind of get into the complication with the homeowners association as well. I mean, this easement was granted in accord with the development of the Beach Lane subdivision itself. So essentially we have the developer convey these properties subject to this easement that was already imposed or given by St. Joe. To your point about the express language of that paragraph 5, compliance with governmental authorizations, I think it's a disingenuous reading to suggest that only the county was bound. I mean, it's clear the county was indicating and accepted and agreed that the easements granted, that being the 75-foot easement that was required by the development order and the consent judgment, as well as the beach access easement, because remember, the consideration for this easement was a 1997 agreement wherein the county agreed to abandon a roadway in exchange for St. Joe, the developer. This is a normal practice, which is a developer has land and maybe it wants to have the county build a street or sidewalks and they enter into a kind of agreement. And then when it develops the properties or develops a development in this case, then when it sells these units or these homes, it is these easements that are all part of the purchase documents that the homeowners get. Correct. I agree with that. What I'm saying is that this paragraph, to me it's a disingenuous reading to suggest that only the county is bound by the existing governmental regulations, orders, or authorizations, especially given the significance of the Resolutions 9979, which is the development order upon which the development of the beach lane subdivision and indeed Watercolor itself was allowed to proceed based upon the consent judgment. But the easement does not say the parties incorporate this by reference. It doesn't provide such clear language. It doesn't say that, but if you look below the initial two paragraphs with the introductory paragraphs where the easement is granted, it says to have and to hold the easements and rights of way herein granted to the county all upon and subject to the following terms, conditions, and reservations. And then you go into the eight-numbered paragraphs, paragraph five of which is the compliance with governmental authorizations, wherein Resolution 9979 is referenced, again, which incorporates the consent judgment. Can I just ask you to respond, I guess briefly, to just sort of confess my own guilt of sort of being down in the weeds of the contract language. But if we just sort of take a couple of steps back, the homeowners take this property subject to an easement, right? They look at it and they say, okay, so the easement says its purpose is to provide a way of passage by foot over the beach. That makes total sense. Of course people have to be able to like walk across the beach to get from one parcel to another. But then suddenly the ordinance comes in and says, now people get to like plunk down in front of your house and build sandcastles and leave their fishing equipment and their surfboards and their beach umbrellas. That just seems to me like totally different, just from the perspective of a homeowner. Isn't that pretty different? I don't think so. Again, I think it goes back to whether or not the ordinance would have actually triggered the abandonment provision. Because, again, there is an out in the severability clause where the county obviously anticipated there would be judicial challenges as to whether or not customary use actually existed on the property and would be subject to a judicial determination, just like the litigation that's going on right now based upon the legislature essentially pulling the rug out from the county on this ordinance. Let me ask you one quick question. So I referenced to your opposing counsel footnote 8 in your brief about if we agree with Flock of Seagirls and they would ask that we terminate the easement, you are suggesting that is not the remedy if we find in favor. Can you just explain that a little bit more rather than just in a footnote? Sure. I think it goes back to the conversation that Judge Newsom and I were having earlier, and that is the effect of granting the relief to these appellants would be to essentially disrupt the easement itself. This easement, while it impacts these particular property owners, it also impacts all the other property owners in Beach Lane, all the property owners in Watercolor, the association, and so that's why I don't think it's an appropriate remedy. I believe that Judge Rogers' finding that, well, if there is an actual abuse, again, there's no record evidence of any actual abuse, that then there could be injunctive relief pursued. I guess what you're saying is that there is no abuse because the passing of the ordinance was not in itself sufficient is what your argument is. Exactly. Well, then what do you believe would be sufficient? Would it be actually implementing the ordinance? Again, you're right. There's actually no evidence in the record that the county enforced this ordinance. As a matter of fact, I would suggest otherwise. There's no evidence in the record that any members of the public actually encroached on these plaintiffs' or appellants' property and abused the property for an expansion beyond the terms of the easement. Once the ordinance passed, someone could. Oh, it was certainly possible. And was there an injunction in place immediately? No one sought an injunction. Okay. I think we have your case very much. Thank you very much. Ms. Giddings, you have four minutes remaining. Yes, Your Honor. I'd just like to clear up a couple of things. It's not briefed. We're happy to provide supplemental briefing, but in our supplemental briefing to the district court, she asked us the question about dividing it on a parcel-by-parcel basis, and we provided case law that supported the ability of one property owner to come in and terminate an easement just as to their property. And she has a footnote in the order that said our briefing wasn't helpful, that the county didn't come up with anything, any cases, and our cases were distinguishable because there was no consent judgment involved. So, in other words, the case law says you can divide parcels up piecemeal. She just was looking at the consent judgment and didn't think it was appropriate to do it because of what the consent judgment said. Can you address opposing counsel's argument about the fact that passing the ordinance in and of itself was not sufficient? Yes, Your Honor. I was just getting ready to turn to that. I think that the plain language of the easement addresses that. It doesn't say that they have to use it. It says that if they attempt to use it, if you look at the abandonment clause, it says, should the county use or attempt to use an easement granted herein for a purpose not specified, all rights hereby granted shall cease and terminate. Now, in acting that ordinance, there clearly showed their intent to allow people to use the easement for a purpose for which it is not intended. And the judge herself recognized, the district court judge recognized that. But that's why she said, under the terms of the consent judgment, that they had no authority to enter into this termination clause and this agreement. And there's nothing in there prohibiting it. And as Your Honors pointed out earlier, easements terminate upon a number of things. In the Trepanier case, the easement disappeared because of erosion. And there used to be a road. And there was no longer any road. And the question was, can we move the road up further onto the property owner's property? And so things change. And so, yes, it's intended to be perpetual unless you violate it. So, Your Honors, I think you understand the issues. Do you have any other questions of me? Then we would ask that you reverse the judgment, vacate it with directions that a declaration be issued stating that the easement is terminated as to Block of Sea Girls and Valentine's properties. Thank you, Your Honors. Thank you both very much. That case is submitted. And the court will be in recess until 9 a.m. tomorrow morning. All rise. Thank you. Thank you. So that was fun. You know, it's beautiful. It's kind of nice to talk about the case. You have to be very good at that. Way to go, Brian. Way to go. Tomorrow, you'll get these cases. Really? One went away? No, one went away. I'm going to say, I'd rather have the three on Friday. We'll get through it. All right, see you later. Yes, sir. Thank you.